ORIGINAL

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 NOV 14 PM 3:45

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

MORRIS PAULK, )
)
    Plaintiff, )
)
v. )
) CASE NO. CV506-118
HOUSING AUTHORITY OF THE CITY )
OF DOUGLAS, )
)
    Defendant. )
)

## O R D E R

Before the Court is Defendant Housing Authority of the City of Douglas's Motion for Summary Judgment. (Doc. 12.) After careful consideration and for the following reasons, Defendant's Motion is **GRANTED**.

### BACKGROUND

Plaintiff Morris Paulk, a former employee of the Housing Authority of the City of Douglas ("the Authority" or "Defendant") has brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Plaintiff alleges discrimination on the basis of race in relation to the Authority's failure to promote him and its decision to terminate him in July 2006. Plaintiff's Complaint also contains a state law claim for Negligent Retention.[1]

---

[1] Plaintiff's Complaint originally included a claim for age discrimination under the Age Discrimination in Employment Act

Plaintiff, who is African-American, worked for the Authority as a member of its "make ready" crew. This crew was responsible for a variety of tasks, including plumbing, painting, carpentering, and cleaning. On July 13, 2006, Plaintiff, along with the other two members of the make ready crew, both African-American men, received a notice of separation. He was told the reason for his termination was cost-cutting. The Authority calculated that it could save $46,698 in operating expenses by eliminating the make ready crew and outsourcing the services it had provided. Plaintiff testified at his deposition that contractors were called in the day after his termination to perform the cleaning responsibilities that had belonged to his crew.

During his employment at the authority, Plaintiff overheard members of the Authority's staff make several allegedly racist comments. First, he heard an employee named Tracy Swain state that he was "tired of doing this damn nigger work." Second, Plaintiff testified as follows regarding a conversation he had with an employee named Mickey Thomas:

> A: I said will you consider me coming to your house and eat [if I marry your sister]. Yeah. Could I spend the night. No. I said in other

---

of 1967, 29 U.S.C. § 621 et seq. Plaintiff admits in his Response to Defendant's Motion for Summary Judgment that the Authority did not have "twenty or more employees" as required by the ADEA and that his ADEA claim is therefore precluded.

2

>           words, you don't like--You don't like blacks,
>           do you. Well not right off hand, I don't,
>           Morris.
>       Q: Well how did he say that when he said it?
>           Was--I mean was he joking?
>       A: Well I don't know how--I don't know how you
>           put it. But I--I took the understanding is he
>           didn't care nothing for blacks.

In addition, Plaintiff testified that Carolyn Thompson, formerly the Executive Director of the Authority, "didn't like blacks." However, Plaintiff stated that he had never heard her make a racist comment.

The affidavit of Clara Graham, Executive Director of the Authority, includes an exhibit consisting of "true and accurate copies of the Quarterly Tax and Wage Reports submitted by the Authority to the Georgia Department of Labor" for the quarterly period in which Plaintiff was terminated and for the seven quarters preceding it. The Authority employed fourteen or fewer employees for seven out of these eight yearly quarters. During the yearly quarter ending in June 2006, it had fifteen employees. Defendant now moves for summary judgment on Plaintiff's federal claims.

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

## II. Employer Status Under Title VII

As an initial matter, Defendant argues that the Authority did not have enough employees to meet the minimum number required by Title VII. Pursuant to the statute, the term "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year . . . ." 42 U.S.C. § 2000e(b). The Supreme Court has explained that the so-called "payroll

method," in which an employee "is counted as an employee for each working day after arrival and before departure," should be used in determining the number of employees within a company at a given time. Walters v. Metro. Educ. Enter., Inc., 519 U.S. 202, 211, 117 S. Ct. 660, 136 L. Ed. 2d 644 (1997). The term "current calendar year" refers to the entire year in which the discrimination occurred. See id. at 663 (stating without discussion that, with respect to discrimination occurring in 1990, the current and preceding years were 1990 and 1989).

Defendant, relying upon its Tax and Wage Reports, shows that the Authority had fewer than fifteen employees during the year 2005. In the year 2006, it had fewer than fifteen employees for the first and third yearly quarters and exactly fifteen during the second. Defendant does not present evidence of the number of employees it had during the final yearly quarter of 2006.

In response, Plaintiff argues that Defendant failed to provide sufficient documentation to show that it did not have fifteen employees for twenty or more weeks. Indeed, because Defendant failed to provide records for the final quarter of 2006, the Court cannot say that there is no issue of material fact, particularly when Defendant would only have needed to employ one additional employee for seven weeks during the

undocumented period to qualify as an employer under Title VII. Therefore, Defendant is not entitled to summary judgment on this ground.

### III. Claims of Racial Discrimination

Defendant's Motion for Summary Judgment must still be **GRANTED**, however, because Plaintiff has failed to establish a prima facie case of discrimination.

A plaintiff's claim of discrimination that is based on indirect evidence involves a three-step analysis first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).[1] First, the Plaintiff must prove a prima facie case of discrimination by a preponderance of the evidence. Id. at 802. Second, if the plaintiff satisfies this requirement, a burden of production shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory conduct. Id. Finally, if the defendant satisfies this burden, the plaintiff must demonstrate by a preponderance of the evidence that the defendant's proffered

---

[1] "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the [protected class] are direct evidence of discrimination. To be direct evidence, the remark must indicate that the employment decision in question was motivated by race." Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227 (11th Cir. 2002). In the instant case, two allegedly racist remarks made by co-workers fail to provide direct evidence that he was terminated due to racial discrimination.

6

reasons are not true, but are mere pretext for discrimination. Id. at 804. "Despite the shifting burdens of proof, the ultimate burden of persuasion remains at all times with the plaintiff." Polote Corp. v. Metric Constructors, Inc., 880 F. Supp. 836, 843 (S.D. Ga. 1995)(Judge Edenfield)(citing Tex. Dep. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1980)).

### A. Failure to Promote

The first issue with respect to racial discrimination is whether Defendant has established a prima facie case of racial discrimination in the Authority's failure to promote him. "To establish a prima facie case of discriminatory failure to promote, a plaintiff must prove: (1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted." Combs v. Plantation Patterns, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997)(citing Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir. 1988)).

In the instant case, it is undisputed that Plaintiff has established the first prong of the test. However, Plaintiff testified that he never applied for a promotion, as required by the second prong of the test. He therefore also could not

have been rejected.[2] Because Plaintiff is unable to establish a prima facie case for racial discrimination in the Authority's failure to promote him, summary judgment is **GRANTED** as to this claim.

B. **Termination**

The next issue before the Court is whether Defendant has established a prima facie case of racial discrimination in the Authority's decision to terminate his employment. To establish a prima facie case of discrimination in a case involving termination of employment, a plaintiff must show the following elements: (1) that he belongs to a racial minority; (2) that he was subjected to an adverse employment action; (3) that he was treated less favorably than similarly situated employees who were not members of the minority class; and (4) that he was otherwise qualified for the position. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

---

[2] Plaintiff also testified that he spoke to a supervisor when a new employee named Carey West was hired in the position of carpenter or plumber. Plaintiff asked the supervisor why he had been passed over for the promotion, and she told him the job had been created specifically for Mr. West. Even if the Court had found that Plaintiff effectively applied for the job given to Mr. West, Plaintiff has no knowledge of Mr. West's educational background, experience or special training. Therefore, Plaintiff would be unable to establish that Mr. West was equally or less qualified than he was, as required by the fourth prong of the test.

8

Defendant, relying upon Coutu v. Martin County Board of County Commissioners, 47 F.3d 1068, 1073 (11th Cir. 1995), urges the Court to apply a modified test often used in cases involving reductions of workforce. Under this modified test, a plaintiff must show the following elements in order to establish a prima facie case: (1) that he is a member of a protected class; (2) that he was terminated; (3) that he was qualified for another position at the time of termination; and (4) that the employer intended to discriminate in failing to consider the plaintiff for another position. Coutu, 47 F.3d at 1073. The parties agree that Plaintiff has established the first two prongs, which are identical for both tests.

Under the circumstances of this case -- that is, termination of three employees from a small work force, purportedly for cost-saving reasons -- Plaintiff could potentially establish an inference of discrimination by satisfying either of the four-part tests presented by the parties. Therefore, in order to establish a prima facie case, Plaintiff must establish either of two possible sets of facts.

First, Plaintiff could establish his prima facie case by showing that (a) he was treated less favorably than similarly situated employees who were not members of the minority class and (b) he was otherwise qualified for the position. See Holifield, 115 F.3d at 1562. With respect to this test, the

Court finds that Plaintiff's favorable performance reviews demonstrate that he was qualified for his position with the Authority.

However, he has failed to provide sufficient evidence that he was treated less favorably than similarly situated employees outside the protected class. When deposed, Plaintiff testified that the Authority retained two Caucasian employees who had been working for the Authority for fewer years than he had. However, Plaintiff has failed to establish that the retained employees were "similarly situated" to him, as required. One drove a plumbing truck and the other worked as a supervisor. Both of the retained employees therefore performed different tasks than did Plaintiff. Furthermore, Plaintiff has introduced no evidence regarding their educational backgrounds or wages. Accordingly, Plaintiff has failed to establish a prima facie case under this test.

Second, Plaintiff could establish a prima facie case of discrimination by showing that that (a) he was qualified for another position at the time of termination, and (b) the employer intended to discriminate in failing to consider the plaintiff for another position. See Coutu, 47 F.3d at 1073. With respect to this test, the Court finds that Plaintiff has made no showing that the Authority intended to discriminate on the basis of race in failing to consider him for another

position. Without evidence of the racial identities and other qualifications of the alleged replacement contractors, Plaintiff cannot create an inference of discriminatory intent on the part of the Authority in its failure to hire him for contract work. This is particularly true where there is no evidence that Plaintiff expressed a desire to be considered for such work. Plaintiff has thus failed to establish a prima facie case under this test.

The Court notes that even if Plaintiff had established a prima facie case, summary judgment would still be appropriate. Defendant has provided a reasonable and legitimate explanation for the termination: its desire to cut costs by outsourcing work. Plaintiff has presented no evidence to show that this explanation was mere pretext.

Because the Court finds that Plaintiff has failed to establish a prima facie case of racial discrimination under either of the proposed tests -- and because even if Plaintiff had established a prima facie case, he has made no showing of pretext -- Defendant's Motion for Summary Judgment must be **GRANTED** with respect to Plaintiff's Title VII claims.

IV. **Pendent Jurisdiction**

With respect to Plaintiff's state law claim, the Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which

it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). The Supreme Court has likewise explained that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966); see also Pijnenburg v. W. Ga. Health Sys., Inc., 255 F.3d 1304, 1308 (11th Cir. 2001). Because Plaintiff's federal claims have been dismissed, the Court declines to exercise pendent jurisdiction over Plaintiff's state law claim for Negligent Retention.

## CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's federal claims: Causes of Action One, Two and Three, which are **DISMISSED WITH PREJUDICE.** The remaining state law claim, Cause of Action Four, is **DISMISSED WITHOUT PREJUDICE.** The Clerk of Court is **DIRECTED** to **CLOSE** this case.

SO ORDERED this 14th day of November, 2007.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA